# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――――

Argued January 18, 2007　　　　Decided April 17, 2007

No. 06-5295

ACTION ALLIANCE OF SENIOR CITIZENS, ET AL.,
APPELLEES

v.

MICHAEL O. LEAVITT, SECRETARY OF DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
APPELLANT

―――――

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01607)

―――――

*Alisa B. Klein*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, *Jeffrey S. Bucholtz*, Principal Deputy Assistant Attorney General, *Jonathan F. Cohn*, Deputy Assistant Attorney General, *Mark B. Stern*, Attorney, *Daniel Meron*, General Counsel, U.S. Department of Health and Human Services, *Kathleen H. McGuan*, Associate General Counsel, and *Marcus H. Christ* and *Lawrence J. Harder*, Counsel.

*Gill Deford* argued the cause for appellees. With him on the brief were *Vicki Gottlich* and *Patricia B. Nemore*.

*Bruce B. Vignery*, *Sarah Lenz Lock*, and *Michael Schuster* were on the brief for *amicus curiae* American Association of Retired Persons in support of appellees.

Before: GINSBURG, *Chief Judge*, and TATEL, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: This case involves an effort on behalf of some 230,000 participants in the Medicare Part D prescription drug program to resist—indeed to reverse—the government's efforts to recover payments mistakenly made to those participants. The district court issued an injunction ordering the Secretary of Health and Human Services (the "Secretary") (1) to refund monies to those participants who had, at the Secretary's request, returned the errant payments and (2) to notify all recipients of a right to request waiver of repayment. This court stayed the injunction. The plaintiffs have over the course of the litigation invoked two statutory bases for relief. (Plaintiffs also brought constitutional claims, which the district court did not reach.) As to the claim under 42 U.S.C. § 404(b), we find that the district court lacked jurisdiction; and the second claim, under 42 U.S.C. § 1395gg, clearly lacks merit. Thus, we vacate the injunction and remand.

\* \* \*

Medicare Part D, established by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066, offers subsidized prescription drug insurance coverage. 42 U.S.C. § 1395w-101(a)(1). Whereas under Medicare Parts A and B the government pays providers on participants' behalf for goods or services received, under Part D the government contracts for and subsidizes insurance plans offered by private, third-party insurers. *Id.* § 1395w-115.

Part D participants pay monthly premiums to their insurers. See *id.* § 1395w-113(a). Most make these payments directly, but about 20% have opted to have the Social Security Administration ("SSA") deduct the amount of their Part D premium from their monthly benefits under Title II of the Social Security Act and transmit that sum, on the participant's behalf, to the insurer. *Id.* §§ 1395w-116(b)(3) & 1395w-24(d)(2)(A); see also 42 C.F.R. §§ 423.293(a) & 422.262(f) (2006). The SSA, which plaintiffs have not sued, administers Old-Age, Survivor, and Disability Insurance benefits under Title II of the Social Security Act; Health and Human Services ("HHS") administers the various Medicare programs found under Title XVIII of that Act. Since 1994 the SSA, directed by the Commissioner of Social Security (the "Commissioner"), has been independent of HHS. See Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464; 42 U.S.C. §§ 401-434 (Title II); *id.* §§ 1395-1395hhh (Title XVIII).

In a monumental gaffe in early August 2006, the SSA wrote to some 230,000 participants, stating "[w]e will no longer deduct money for your health plan premium(s) from your monthly benefits." Amended Compl., Ex. B, Joint Appendix ("J.A.") 61. The letter also said, without further explanation, that the addressee would be receiving a check in

a specified amount, coinciding with the recipient's premium for the just-past month. The average payment was $215, for a total of some $47 million. The parties agree these payments were all made in error. In early September, the Secretary requested repayment of the funds by the end of that month, but indicated that "[i]f returning the amount in full presents you with a hardship, you may request to make monthly installment payments for as many as seven months." See *id.* Ex. A, J.A. 58-59. The Secretary's letter also stated (accurately) that despite the mistaken payment to the insured, "prescription drug coverage will continue uninterrupted." *Id.*

On September 15, Action Alliance and the Gray Panthers (collectively "the Alliance"), advocacy organizations whose membership includes many Part D participants, filed suit in district court seeking injunctive, declaratory, and mandamus relief on statutory and constitutional grounds. (The plaintiffs later amended their complaint to add Lucy Carolyn Loveall, a Part D participant who received a check for $161.70, a sum which she spent and states she is now unable to repay.) The complaint rested in part on 42 U.S.C. § 1395gg, which allows the government to recover funds where "more than the correct amount is paid under th[e] [Medicare] subchapter . . . for items or services furnished an individual," § 1395gg(b), but provides for government waiver of this recovery:

> There shall be no adjustment as provided in subsection (b) of this section (nor shall there be recovery) in any case where the incorrect payment has been made . . . with respect to an individual who is without fault . . . if such adjustment (or recovery) would defeat the purposes of subchapter II [Old-Age, Survivors, and Disability Insurance] or subchapter XVIII [Medicare] of this chapter or would be against equity and good conscience.

42 U.S.C. § 1395gg(c).

The Alliance asserted that Part D participants who received erroneous payments were entitled, under § 1395gg, to "written notice . . . of their right to seek waiver of repayment" and an oral hearing prior to recovery of such payments. Amended Compl. at 14, J.A. 52. The district court rejected this claim, noting that § 1395gg applies only to payments for "items or services" (such as under Medicare Parts A and B), and thus that its waiver provision did not encompass erroneous *premium* refunds. *Action Alliance of Senior Citizens v. Leavitt*, 456 F. Supp. 2d 11, 18 (D.D.C. 2006).

But the court observed that Medicare Part A and B participants who authorize SSA to withhold their premiums under those parts do enjoy a waiver right for erroneous premium refunds. Internal SSA policy guidelines, in the form of its Program Operations Manual System ("POMS"), create such a right on the basis of Title II's general waiver provision, 42 U.S.C. § 404(b). *Action Alliance*, 456 F. Supp. 2d at 18-20; see also Social Security Administration, Program Operations Manual System § HI 01001.330.A.

Section 404 addresses adjustment or recovery of incorrect payments to Title II (Social Security) beneficiaries "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this [Title II] subchapter." 42 U.S.C. § 404(a). Section 404(b) goes on to say:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or

recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

*Id.* § 404(b).

Although the POMS was silent as to waiver for erroneous refunds of Part D premiums, the district court believed that the "statutory scheme" required that Part D beneficiaries receive the same treatment as those under Parts A and B. *Action Alliance*, 456 F. Supp. 2d at 20. It ordered the Secretary to *re-*return the erroneous payments to Part D participants who had repaid them and to notify all recipients of a right to request a hardship waiver.

\* \* \*

The Secretary challenges the injunction on a number of grounds, most pertinently that the district court erred as a matter of law in concluding that the statutes and regulations governing overpayment of benefits and premiums under Medicare Parts A and B apply to premium refunds under Medicare Part D. The district court relied primarily on two statutes in support of the asserted waiver right (also invoked by the Alliance on appeal): § 404(b), which is the source of the waiver right provided in POMS for Part A and B beneficiaries, and § 1395gg(c), which, though applicable only to provision of "items and services," also indicated a general embrace of waiver on grounds of "equity and good conscience." Before reaching either ground, however, we consider the court's jurisdiction (despite the government's failure to assert its lack until we called for briefing on the subject). See *Midwest Independent Transmission System Operator, Inc. v. FERC*, 388 F.3d 903, 908 (D.C. Cir. 2004)

(describing court's "independent obligation to be certain" of its jurisdiction).

*Jurisdiction of § 404(b) claim.* The Alliance asserts that the district court had jurisdiction over its § 404(b) claim under the federal question and mandamus statutes, 28 U.S.C. §§ 1331 and 1361, as well as Title II's separate judicial review provision, 42 U.S.C. § 405(g). But the Alliance (and the individual plaintiff) failed to present a § 404(b) claim to the Commissioner of Social Security before seeking review; the omission deprives the federal courts of jurisdiction to consider the claim under § 405(g), and, because that route was fully available to the Alliance, precludes jurisdiction under the other provisions.

The starting point for analysis is 42 U.S.C. § 405(h), which provides:

> No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this [Title II] subchapter.

By its plain terms, then, § 405(h) bars Title II claims against *any* officer of the United States (thus including the Secretary) and applies to any claims "arising under this subchapter"— i.e., 42 U.S.C. §§ 401-434.

The Alliance makes clear (as it must, given § 404(a)'s requirement of a "payment . . . under this subchapter") that its § 404 claim depends on a classification of the premium

refunds as a payment by the Commissioner under Title II. See Appellee's Br. at 22 ("[T]he payments at issue and the entity responsible for making them are Social Security benefits and the SSA."). Thus the claim is unavoidably one "arising under this subchapter" for the purposes of § 405(h).

Section 405(h) operates in conjunction with Title II's judicial review provision, § 405(g):

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision [in a district court] by a civil action . . . .

42 U.S.C. § 405(g).

In *Weinberger v. Salfi*, 422 U.S. 749 (1975), the Supreme Court ruled that the district court had lacked jurisdiction where the complaint "contain[ed] no allegations that [the plaintiffs in question] have even filed an application with the [Commissioner], much less that he has rendered any decision, final or otherwise, review of which is sought." *Id.* at 764. And the Court noted that § 405(h) "[o]n its face" bars federal-question jurisdiction over such claims. *Id.* at 756. The Court soon qualified *Salfi*'s jurisdictional treatment of § 405(g)'s requirement of "a final decision . . . made after a hearing," see *id*. at 763-64, distinguishing in *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976), between the "final decision" element of *Salfi*'s exhaustion requirement (from which a court could relieve a plaintiff) and the "nonwaivable element [of § 405(g) which] is the requirement that a claim for benefits shall have been *presented* to the [Commissioner]." *Id.* (emphasis added). The Court held that a plaintiff had satisfied presentment by responding to a questionnaire from a state agency, where the

SSA later adopted (pursuant to the statutory scheme then in effect) the state agency's conclusion that Eldridge was no longer disabled as a ground for terminating his federal disability benefits. *Id.* at 329; see also Amendments to Title II of the Social Security Act, Pub. L. 83-761, ch. 1206, tit. I, § 221(a), 68 Stat. 1052, 1081 (1954) (current version at 42 U.S.C. § 421(a)).

We have described *Salfi*'s presentment requirement as an "absolute prerequisite" to review, finding a lack of jurisdiction where a plaintiff "proceeded directly to district court, seeking a preliminary injunction barring HHS . . . from implementing [a] new rate reduction." *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1129-30 (D.C. Cir. 1992); cf. *Ryan v. Bentsen*, 12 F.3d 245, 247 n.3 (D.C. Cir. 1993) (presentment satisfied where plaintiff requested reconsideration from a regional SSA office of a decision to terminate his retirement benefits).

The Alliance points first to the fact that Lucy Loveall's social worker contacted "Medicare and Social Security" on her behalf after Loveall received the erroneous check. See Amended Compl. at 12, J.A. 50. But, as described by the Alliance, that communication made no mention of any claim to a waiver right.

Alternatively, the Alliance relies on an August 30 e-mail to the Administrator of the Centers for Medicare & Medicaid Services ("CMS") "inform[ing] him that the letter that CMS was sending out to the affected beneficiaries did not alert them to their right to waiver and request[ing] that [the letter] be revised to include that information." Amended Compl. at 8, J.A. 46; see also Appellees' Supp. Br. at 6. We need not decide whether an e-mail to CMS (which administers federal health care financing programs under Titles XI, XVIII, and

XIX of the Social Security Act and is a division of the Department of Health and Human Services) would qualify as presentment of a claim under § 404(b) (a provision so far as appears administered by the Commissioner of Social Security), as the Alliance has failed to show that it ever invoked § 404(b) before either agency. Neither in its original or amended complaint, nor in any papers that it has called to our attention, nor in its supplemental briefing on jurisdiction, has it suggested that the e-mail mentioned § 404(b).

The Alliance's various other arguments attempting to avoid presentment are also unavailing. The Alliance contends that the "Secretary knows, without receiving a specific demand, that beneficiaries want the right to seek waiver." Appellees' Supp. Br. at 6. But, putting aside that presentment to the Commissioner is in question, a notion that imputed official intuition of people's probable desires could qualify as a presentment would strip the requirement of all content. See *Eldridge*, 424 U.S. at 328; see also *Nat'l Kidney Patients Ass'n*, 958 F.2d at 1130. Similarly, the Alliance's assertion that Loveall's *non*-response to the Secretary's demand for repayment amounted to presentment is simply another label for a proposal to erase the requirement.

The Alliance also cites *Linquist v. Bowen*, 813 F.2d 884, 887-88 & nn.11-12 (8th Cir. 1987), a case involving SSA's misreading of a provision reducing benefits on account of beneficiaries' outside income. The decision treated as presentment the unnamed class members' filing of their *initial* claims and their later earnings reports. *Id*. at 887 n.11. But it also rested on the continued availability of mandamus—a proposition with which we agree but which is subject to mandamus's invariable condition, the absence of an alternative remedy, which the court did not address. Moreover, the decision's explicit reliance on categorizing the

claim as "collateral," see *id*. at 887-88 n.12*,* has been rendered obsolete by *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13-14 (2000).  (*Briggs v. Sullivan*, 886 F.2d 1132, 1139 (9th Cir. 1989), which the Alliance also cites, was grounded on the same distinction.)  Finally, insofar as *Linquist* dispenses with the presentment requirement for non-entitlement claims, as it appears to do, see 813 F.2d at 887-88 n.12, we respectfully disagree.

The Alliance alternatively asserts that the district court had mandamus jurisdiction over the § 404(b) claim.  But the existence of an administrative remedy under Subchapter II— i.e., the Alliance could present the § 404(b) claim directly to the Commissioner and then, if it were denied, seek judicial review pursuant to § 405(g)—precludes the exercise of mandamus, which is available only if "no other adequate remedy [is] available to plaintiff."  *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005).

We note that our prior observations that § 405(h)'s jurisdiction-stripping provision (which explicitly mentions only §§ 1331 and 1346) does not in theory bar a court from exercising mandamus jurisdiction with respect to a Social Security claim, see *Ganem v. Heckler*, 746 F.2d 844, 850 (D.C. Cir. 1984) ("[M]andamus jurisdiction is not precluded by [§ 405(h) of] the [Social Security] Act."), are obviously subject to the standard rule that the existence of an alternative remedy precludes mandamus.  See also *Heckler v. Ringer*, 466 U.S. 602, 620-21 (1984) (mandamus jurisdiction "not available" where plaintiff had administrative remedy under Medicare Act).

Thus, we conclude that the district court lacked jurisdiction to consider a claim for waiver under § 404(b).

12

\* \* \*

We now turn to the Alliance's second ground for relief, 42 U.S.C. § 1395gg. Adopting a position in some tension with its earlier characterization of the erroneous payment as having been made under Title II, the Alliance asserts that the monies were "improper payments made in the Medicare program," Appellees' Br. at 29-30, and thus subject to waiver under § 1395gg(c). Compare Oral Arg. at 21:30 ("The only place this money could have come from was the Title II trust fund."). Accepting this view arguendo, we hold that although the district court had jurisdiction, the § 1395gg claim clearly lacks merit.

*Jurisdiction of § 1395gg claim.* The general bar on federal question jurisdiction originating in the Social Security domain, § 405(h), is integrated into the Medicare subchapter by 42 U.S.C. § 1395ii, which provides:

> The provisions of . . . subsections (a), (d), (e), *(h)*, (i), (j), (k), and (*l*) of section *405* of this title [42 U.S.C. § 405], shall also apply with respect to this subchapter [XVIII] to the same extent as they are applicable with respect to subchapter II of this chapter, except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively.

42 U.S.C. § 1395ii (emphasis added). Thus, general federal question jurisdiction is generally unavailable for "any claim arising under" the Medicare Act—i.e., any claim that has its "standing and . . . substantive basis" in that Act. *Illinois Council*, 529 U.S. at 11.

But the Supreme Court has recognized an exception to this rule where application of § 1395ii "would not lead to a channeling of review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 17 (Medicare Part A claim); see also *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 669-70 (1986) (applying, in the absence of any statutory grant of judicial review in the Part B statute then in effect, a "strong presumption that Congress intends judicial review of administrative action" and finding jurisdiction over a statutory and constitutional challenge to a Medicare Part B regulation); *American Chiropractic Ass'n, Inc. v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005) ("[I]f the claimant can obtain judicial review [of his Medicare Part C claim] only in a federal question suit, § 1395ii will not bar the suit.").

In *Illinois Council* the Court recently reaffirmed the principle that federal question jurisdiction is available where application of §§ 1395ii and 405(h) would mean "no review at all" of a plaintiff's claim, 529 U.S. at 19, but found that the plaintiffs there had failed to show that they could obtain "no review at all" (absent § 1331 jurisdiction) of their statutory and constitutional challenges to certain Part A regulations, *id.* at 20. Thus the Court appears to have left open a door to § 1331 to fill jurisdictional gaps it presumes Congress did not intend. Although the plaintiffs in *Illinois Council* and *Michigan Academy* backed their statutory claims with constitutional ones, the same appears to be true here. Moreover, *Illinois Council* did not explicitly restrict its rule to constitutional claims. And *Michigan Academy* formulated its broad presumption against "prohibit[ing] all judicial review of executive action," 476 U.S. at 681 (internal quotation marks omitted), by relying in part on *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975), a case involving only a statutory challenge to agency action.

Under *Illinois Council* and *Michigan Academy*, then, we must consider whether the Alliance could have obtained judicial review of its § 1395gg claim through the "special review channel[s]" of the Medicare Act. The problem is that no statute appears to make any affirmative grant of (channeled) jurisdiction over Medicare Part D claims of the type pressed by the Alliance. First, § 405(g) is conspicuously absent from the list of Title II provisions incorporated into Medicare by § 1395ii. Second, while 42 U.S.C. § 1395ff(b)(1)(A) provides for judicial review of benefit claims under § 1395ff(a)(1), incorporating § 405(g) by reference, subsection (a)(1) in turn covers only claims under Medicare Parts A and B. In *Ringer,* the Court held that § 405(g) provided the sole jurisdictional basis for a claim for benefits under Medicare Part A. 466 U.S. at 620-21. Under *Salfi* and *Eldridge*, the incorporation of § 405(h) into Medicare rendered § 1331 "not available" as a source of jurisdiction. *Id.*

Medicare Part D contains its own, more narrowly-tailored provision for judicial review, 42 U.S.C. § 1395w-104(h)(1), on which the Alliance relied here as a basis for jurisdiction. That section operates by imposing on Part D insurers certain provisions already applicable to providers under Part C:

> [A] PDP sponsor [i.e., the private insurer providing the Part D drug coverage] shall meet the requirements of paragraphs (4) and (5) of section 1395w-22(g) of this title with respect to benefits . . . in a manner similar (as determined by the Secretary) to the manner such requirements apply to a[] M[edicare] A[dvantage] organization . . . under part C [of this subchapter].

42 U.S.C. § 1395w-104(h)(1).

The cross-referenced § 1395w-22(g) (the judicial review provision for Medicare Part C) deals with coverage determinations by a Part C private insurer. Section 1395w-22(g)(1)(A) requires insurers (known as "Medicare Advantage" ("MA") organizations) to have a procedure for making benefit determinations for enrolled individuals, and subsection (g)(2)(A) requires MA organizations to provide for reconsiderations of such decisions. Sections 1395w-22(g)(4) and (5), mentioned explicitly in § 1395w-104(h)(1), provide:

> (4) The Secretary shall contract with an independent, outside entity to review and resolve in a timely manner reconsiderations [by MA organizations] that affirm denial of coverage, in whole or in part. . . .

> (5) An enrollee with a[n MA organization] . . . under this part who is dissatisfied by reason of the enrollee's failure to receive any health service to which the enrollee believes the enrollee is entitled . . . if the amount in controversy is $100 or more, [is entitled] to a hearing before the Secretary to the same extent as is provided in section 405(b) of this title [42 U.S.C. § 405(b)], and in any such hearing the Secretary shall make the organization a party. If the amount in controversy is $1,000 or more, the individual or organization shall . . . be entitled to judicial review of the Secretary's final decision as provided in section 405(g) of this title . . . .

*Id.* § 1395w-22(g)(4) & (5).

Thus the Part D provisions, in the context of stating prerequisites for PDP sponsors, weave in provisions for judicial review derived from Part C. But these sections do not appear to provide for judicial review of the kind of claim asserted here. The Alliance did not bring a claim against a

"PDP sponsor," see 42 U.S.C. § 1395w-104(h)(1), or for the "failure to receive any health service to which the enrollee believes the enrollee is entitled," see § 1395w-22(g)(5). Rather, the claim was directed against the Secretary for the way in which he has collected premium payments.

As the Medicare statute appears to provide no avenue for judicial review of the Alliance's § 1395gg waiver claim, we apply the rule of *Michigan Academy* and *Illinois Council* and hold that the district court had jurisdiction over that claim under 28 U.S.C. § 1331.

*Merits of § 1395gg claim.* At last we reach the merits of the Alliance's claim to a waiver right under § 1395gg. This proves the easy part of the case. Subsection (a) makes individuals responsible for "payment[s] under this subchapter *to any provider of services* . . . with respect to any *items or services furnished any individual*," 42 U.S.C. § 1395gg(a) (emphasis added), and subsection (b) gives the Secretary authority to recoup from an individual where "more than the correct amount is paid under this subchapter *to a provider of services* . . . for *items or services furnished an individual*," *id.* § 1395gg(b) (emphasis added). Finally, subsection (c) provides for a waiver, saying that, under certain hardship conditions there shall be "no adjustment as provided in subsection (b) . . . where [an] incorrect payment has been made . . . with respect to an individual." *Id.* § 1395gg(c). Thus, by its plain terms, 1395gg applies to overpayments to a "provider of services" for "items or services furnished an individual." It has nothing to do with erroneous refunds of Medicare premiums.

17

* * *

Having found that the district court lacked jurisdiction to consider a waiver claim under 42 U.S.C. § 404(b), and that the parallel claim under 42 U.S.C. § 1395gg clearly lacks merit, we vacate the district court's injunction and remand the case for proceedings not inconsistent with this judgment.

*So ordered.*